The next matter is Leah Augustin et al. v. City of Philadelphia. Mr. Gottlieb. I propose the court. Craig Gottlieb representing the appellant City of Philadelphia. I'd like to reserve four minutes for rebuttal, please. Got it. I'd like to first discuss the due process issues and then the class action issues. On the due process point, the plaintiff's primary argument is that we failed to inform them of their tenant's delinquencies. According to their expert... I'm sorry to interrupt, but virtually always this court is well familiar in the facts, and we even try to steer counsel away quite often going into the facts. But here I would like to get your description of just how the lien management system works. It would help me to have an understanding of just how this operates. Sure. The lien management system is the computer system that will scan the database, and what it looks for is delinquencies that have gone three months and $300, and then when it finds those delinquencies, it identifies those as lien eligible. Much of the time, the lien notices are then sent out. There are occasions which have happened, which is essentially what's given rise to this case, where there will be blockers or exceptions, blocking conditions that are put on those files so that the lien notice is not sent out immediately. Those exceptions or blockers are frequently things like the tenant may have medical issues, so we don't want to lien those properties when they're medical issues. It could be that they could be in what's called the customer responsibility program. It could be that the tenant could be having a debate with the QC. These are all reasons that the lien notice may not get sent out immediately. The one that seems to be the most controversial in this case is the name mismatch, and that would be another reason that if there's a mismatch between the owner's name and the customer records name, there will be a further delay. So is the city at this point in time or even prior to that committed to trying to rectify or to rectifying this mismatch problem? I mean, the city has taken steps to, yes. I mean, yes, the city has tried to minimize it as much as possible, and in fact... Well, this was a very significant matter in the district court's analysis, was it not? The delinquencies, the delay. The mismatch problem. Yes, yes. Just to point out, Your Honor, as a specific matter, plaintiffs suggest that the mismatch happens every time in every case and that there are liens that sit on the books for years. The record also suggests, however, that our expectation is to file the liens as soon as they're made eligible, and what plaintiffs point to are two specific instances where they go on for years. One of them happens to be Augustine, one of the named plaintiffs, and then another individual who's not a named plaintiff. But, for example, somebody like the McSullies, they got specific notices as their debts arose, and in fact, as I said, the record shows that the expectation is to lien as soon as it's eligible. The mismatch shows up, the mismatch is worked over, and the lien is sent out as soon as that happens. If I may take a step back, Your Honor, I don't think any of this matters from a constitutional perspective. I think that there are several reasons why the occurrence of these delinquencies, and I'm glad I had the opportunity to describe it, I don't think they happen nearly as much as plaintiffs suggest they happen. But even if they did, it never rises to a constitutional violation. There are several reasons why. Your suggestion or argument throughout is that, if I understand it correctly, has been that the docketing of a lien in this situation constitutes a very minimal deprivation of property. Am I right? That's correct. That's correct. So does that mean that in applying Matthews, you would stop at Matthews, step one? I think you can do that, Your Honor, but there's a threshold point that I really want to emphasize, which is the Northwood Textile case, which eliminates the need to worry about any of this. Under Northwood Textile, notice to the tenant is notice to the landlord. So we don't have to address any of this because under the law- So you rely very greatly on this agency principle. I think it's not only argument, but it is a dispositive argument. So explain then what that means, how significant the tenant-landlord agency principle is in this context. Well, what it does is it provides notice to the landlord through the agent. So therefore, there are no due process issues at that point. The landlord doesn't notice when we notice. There's no dispute that we send the bills to the tenants. But the landlord could take steps that see to it, that assure that the landlord, too, receives whatever notice the tenant receives, or at least the information, which is the basis for the notice. Is that right? Is that what you're saying? Yes, that is the holding of Northwood Textile. The landlord not only can, but to the extent they want this notice separately, they're required to. And Northwood Textile, which for this purpose is Pennsylvania Supreme Court case, binding on this court because it's describing the relationship between the tenant and the agent, the tenant and the landlord. Under Northwood Textile, the court found that the landlord has plenty of options to make sure he gets notice through the tenant and his agent. And if he doesn't do that, that's up to him. That's not the city's responsibility to dive into their relationship. Now, am I correct, though, that Northwood Textile did not involve any kind of discussion regarding notice requirements? Notice requirements. I'm not sure what you mean. You don't know what I mean by notice requirements? I know what you mean by notice requirements. It didn't figure into the discussion or into the reasoning of Northwood Textile. Well, the landlord argued that you gave notice to the tenant instead of me. And the court said, that's not a problem. So I would suggest that that does speak to notice requirements. It was the exact issue, in fact, Your Honor. The landlord made the argument, you made a mistake, so you gave the notice to the tenant and the court said, no, that's not a problem because they're your agent. Isn't there a more fundamental problem with Northwood Textile in the sense that state law can't dictate for purposes of federal law what constitutes notice at a meaningful time and in a meaningful manner? Your Honor, it can't dictate the requirements of the due process clause, that's for sure. But what it can do, and what I would suggest this court is bound by, is it can dictate what constitutes notice between the landlord and a tenant. Well, but if your argument is that Pennsylvania law says notice to the tenant equals notice to the landlord. Yes. But the facts, I'm not saying necessarily the facts like these were developed in this particular case, but if facts are developed to show that, in fact, tenants never tell their landlords about this, then how could a court conclude that the landlords are on notice of the lien? Because what that court found is that landlords are required to take steps vis-a-vis their tenant. It addressed that very situation, Your Honor. The Pennsylvania Supreme Court looked at that and it said that there are... And beyond that, hasn't that been addressed by the Commonwealth Court in the city of Philadelphia against Perfetti? Two years ago. Right, so here the Judge Simpson speaking for the Commonwealth Court said Perfetti could have avoided this predicament through any number of simple and straightforward methods he outlines. Such methods include incorporating the cost of utility services into rental rates, mandating that tenants sign a privacy waiver, or requiring tenants to prove utility payments are made. Absolutely, absolutely. Very practical. Very practical, and so that court was seven members unanimous on the Pennsylvania Commonwealth Court that were interpreting this state law, also in the exact context of the due process claim, and said that state law said that that was notice of the tenant was sufficient notice to the landlord. Your Honor, I need to make an alternative point. I won't answer any more questions you have about Northwood Textile, but I have a minute left, and there's an alternative point that is also dispositive, completely unrelated. So we went under Northwood Textile. If the court disagrees with us, we went under a second point, too, which is that plaintiffs face a very significant timing problem. They're seeking to expand procedural due process in a way that no court has ever done before. Due process is designed to allow a plaintiff to challenge a deprivation. What the plaintiffs are seeking here is the opportunity to mitigate the deprivation. That is an expansion of the due process clause that no court has ever recognized. The due process clause, and they have every opportunity to fight the bills later in the process, and they can correct any errors, which is the purpose of the due process clause. What they're trying to do is they're trying to say that we also have an obligation to let them know when they can talk to their tenants. That's not our problem. That is something that they need to work out through their own relationship with their tenant. They're trying to mitigate their damage, but that's not the purpose of the due process clause. There's no case that requires us to give notice before the impending deprivation, months and years before the impending deprivation. That's what they're asking. The deprivation is the filing of the lien. They want notice months and years before that. That's an unprecedented expansion of the due process clause. You have reserved time for rebuttal, but rather than wait for that, why don't you briefly address, as you indicated you wanted to, the class certification issues here, which of course is not an issue we'll need to reach in the event that you prevail on the due process. Right. The main point I want to emphasize on the class action issues, Your Honor, is that the court overreached in certifying the B-2 class for retrospective relief. There are too many individualized issues and defenses that will apply to too many of the class members, and the district court assumed them all away, and that's inconsistent with a B-2 class. The most obvious example was the statute of limitations issue. We cite three different individualized issues and defenses. That's one of them. That's a huge problem. The district court's opinion simply makes no sense with respect to statute. All right. So which of the 23A factors, subsections, are you contending was not met here? Commonality. Commonality, typicality, adequacy, and numerosity should not be a problem. I think it fits into any of them. It also fits into the fact that 23B-2 requires it has to apply generally to the class, and it can't apply generally to the class. Well, whether you're talking about a B-1A or B-1B action or a B-2 action or a B-3 action, you've still got to meet the four requisites of subsection A. So would those plus the section B? Yes. My point is I don't think they meet either. They don't meet the A or the B, whether it's called commonality or typicality or apply generally, because there are too many individual situations. Even just the ones that we've been talking about. I mean, statute of limitations, to my mind, is the most obvious one. The district court admitted that several of these are untimely. One of them clearly means the district court found it was untimely. One of them clearly means the district court found it was untimely, yet entered judgment on their behalf. It doesn't make sense. All right. Again, we'll hear you again on rebuttal. Thank you. Thank you very much. Mr. Ecclesburg? Yes. Good morning. Good morning. If it pleases the court, I'd like to start with three key points that set out our position. Point number one, the property deprivation at issue here is a serious one. Point number two, this court already decided in Montanez that the Matthews v. Eldridge Inquiry can be boiled down to this very practical rule, where pre-deprivation process can, as a practical matter, would, as a practical matter, reduce the risk of erroneous or unnecessary deprivations, then such process is required. Point number three, that inquiry is by nature a fact-based inquiry. The district court here recognized all of that. It considered an extensive factual record, the kind of record that was never presented in the Profetti case, nothing about the lien management system. That case that the commonwealth court decided was based on abstractions, on assumptions. We had the technical spec documents for the lien management system, the deposition testimony of the PGW personnel that designed it and that use it. And a detailed report by a national utilities expert. Based on all that evidence and citing Montanez, Judge Joyner found that the city could provide enhanced pre-deprivation procedures with minimal burden or expense. Let's go back to the burden here and let's talk about the lien. As I understand it, when the account becomes past due, a lien is imposed on the property by operation of law. Is that right? No, that's actually not right. That's actually not right. So when does the lien first become imposed? I'll give you the site to the municipal claims law. It's 53 Perdens 7106B. It's true that a claim arises as soon as the gas is used. That's, I think, what Your Honor is referring to. We don't dispute that. But the lien law is clear that at least with regard to a city of the first class, the city must file a lien in order to have an enforceable right against property. So it's not going to cloud the title until a lien has actually been filed. That's correct. So it's a claim then when the gas is provided. It's not a lien. It's a claim. That's correct. All right. And the lien doesn't appear until it is, at the moment, it's perfected upon filing. That is correct. And what happens here is a computer at PGW talks to a computer at the Court of Common Pleas. It goes on the record, and at that point, there is a cloud of title. All right. I'm sorry. Go ahead. Well, the cloud of title, explain to us why that's... Why that's so important. Yeah. I mean, obviously, if you're in the process of selling your home, that's a big problem. It's a big problem. But are there other ways that it's a problem? Well, I mean, you could look at it just from the standpoint of... Someone is going to address this, too. If someone is trying to sell their home, and the title search says, hey, three years' worth of gas bill is not paid, you've got a problem here. You clean that up pretty quickly, right? You either bring the account current, or if there's a mistake, you go to court, and you get the mistake fixed, right? Yes. Judge Hardiman, and I would further say that rather than it being three years' worth of gas usage, if it was 90 days' worth of gas usage, we can be sure it would have been cleaned up. And that's part of the problem here is that the deprivation is actually worsened by the way that they've set up this system. The lien is the deprivation, but it gets even worse when you consider the fact that over the passage of time, their delay that they've built into the system, the delay in letting the landlord know, actually is making it more difficult for the landlord to address the problem. Those are all, I think, really, speaking for myself, persuasive policy arguments about how they could do things better on behalf of the citizens and the property owners of Pennsylvania. I don't know that it enlightens us about the Matthews v. Eldridge constitutional test. And I apologize, Judge Hardiman, if you came across a policy argument. What I'm saying is that what Matthews says is that you have to look at the facts and you have to determine in the context of these facts, not abstractions, not assumptions about what utility bills are or how they're calculated, what kind of notice is appropriate? When should that notice be delivered? And is there an opportunity to be heard? I mean, putting aside the notice, the deficiencies in the content and the timing of the notice, what the district court found was that there's nothing in the notice. Why isn't the filing of the lien the notice? You know, the filing of the lien itself is the city putting the property owner on notice, you owe us money for utilities. And then the next step is, you quote simply, you pay your past due account, or if it's an error, you go, and I know this is onerous if it's erroneous, but if it is erroneous, you go to court and you say, hey, judge, they got the wrong address or whatever. Even the city doesn't make that argument. The city, the system is that we know we have to give pre-lien notice, but it's not notice. It's notice of nothing almost. It basically said, here's the amount. The lien is a deprivation. The Supreme Court has held that. You're right under door. I completely agree with you under door. So then the question is, what kind of notice? Let Judge Hardiman answer his question. Ask his question. But here's, this goes, I guess, to the second prong. I don't see any support in the record for the district court's finding that there's tremendous risk of this. The testimony, as I recall, was a few. I think the city witness said, yeah, there have been a few instances. Am I mistaken about that? Yes, Your Honor, you're not mistaken. You're not mistaken that there was testimony about three or four times a month. People in the lien management system that is supposed to protect them from liening altogether are mistakenly liened. That's what that was. But there was much more powerful statement about the systematic problems, mainly from the expert report from Roger Colton, who basically talked about the fact that utility bills are not simply a question of reading a meter. There's all sorts of reasons why there might be a difference between what comes up on a bill and what may actually legally be due. But that's all theoretical. It's not theoretical. What are the systematic, point to us please in the record, for evidence of the systematic errors that actually occurred where people were charged more money than they should have been charged for their utility? I'm not trying to give you a trick question. I am saying, show me where the Smiths were charged $300 and they should have been charged more. There's another name in your hypothesis. It was inadvertent. You're a little tired of those hypotheses. Maybe Freudian slip. I don't know. The Joneses. Surely, if the city is sending bills that are erroneous from utility services, surely the record is replete with the Joneses and every other landowner where they were charged more than they should have been charged. Can you point in the record for any of that evidence? The only direct evidence of actual error was the acknowledgement that even those people who are supposed to be immune from liens are in fact getting liens. And those were the few, right? That's where you said a few, three or four occasions, right? Yes. All right. So out of tens of thousands of property owners, how could we conclude that that's a factor that weighs in your favor? That seems to be the definition of a de minimis concern. No, Your Honor. The test is, is there a risk of error? And that's not simply a question of if I can – the burden on us wasn't to go through all of the – to go through every single case of a lien and try to find an example of an error. It's a question, is this a system that in its design has a risk of error? And we certainly prove that through the expert testimony of Mr. Colton. I should also say that the risk – it's not simply a risk of there's no gas bill here. The risk also is of unnecessary deprivation. If – what the district court was particularly moved by was that if you really were notifying them in a meaningful time, the landlords, then much of these deprivations would never occur. And that's an essential aspect of this particular circumstance here. That, you know, when you look at what Matthew says, it's not simply the risk of error. It's the probable value of additional safeguards and whether unnecessary or erroneous deprivations could be avoided. And clearly there was evidence of that. With that in mind, let's turn, because time marches on, to one of the major points made by Mr. Dudley. And I'd like you to address that point. Do landlords have an obligation here with respect to their tenants or perhaps more to the point, to protect themselves? Did the plaintiffs here all require their tenants to contract directly with the city for gas service? Did they make arrangements in any way for notice to be provided to them directly? First off, Your Honor, if I could respectfully say that for constitutional purposes, that actually isn't the right question. Well, I hate to pull rank here, but actually it's not your position to say what the proper question is. It may not be, ultimately. I've seen you do that, but it's a point that's been raised by the other side, so I think it ought to be addressed in the interest of validation. I apologize, Your Honor. No, it's all right. We need a few laughs around here, really. There was evidence that Richmond Waterfront did make efforts to get its tenants to notify them of its bills, and he tried, and they didn't give it to him. And meanwhile, he found out later that the bill was outside of his knowledge, not being paid, and the arrears were accumulating. But the reason that I said what I said, Your Honor, was that the Supreme Court has said very clearly, starting with the Mennonite Missionary case, that a party's ability to take steps to safeguard its own interests does not relieve the state of its constitutional obligations. And that's what I meant, Your Honor, when I said that, certainly with no disrespect intended. No, no, no. It's a point that was made by the other side. And Chief Justice Roberts really reiterated that more recently in Jones v. Flowers. The common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation. We've stated the opposite. But, Mr. Ecclesburg, at core, constitutionality of the leaning procedures under the Act are really a closed question, aren't they? I mean, let's look at the case law that we would be looking at. Sager v. Burgess in the Eastern District, 1972. Now, you're going to say, well, that's a hoary case. Well, maybe. It's 45 years old. It doesn't mean it's not good law. It goes up to the Supreme Court. It's affirmed. Then you march on a couple of years later, and you've got Winpenny v. Crotale from this court, 1978. We've got Connecticut v. Doar. You've argued, I guess in opposition to this, quote, municipal liens were imposed in the 1970s. Is it relevant? Why is it irrelevant? Why is that not binding on us in any of that persuasive? It seems to me it is. I don't think you offered really any support for that at all. Then you've got the state cases. You've got St. Profetti and, I think perhaps correctly, Mr. Gottlieb has talked about the Northwood-Textile Mills case. So it would seem maybe that the district court's decision here flies in the face of all of that, both law from the Supreme Court, from this circuit, from the Eastern District, affirmed by the Supreme Court, and by relevant state law. Let me ask you a state question. Why would we go in another direction here today? The answer to that is because the Supreme Court and Doar directed us to. But those cases are all pre-Doar. But let me say this, Your Honor, and let me talk directly to the agency issue that they raised, and then I'll talk about Profetti. Let me start with the agency, the argument. What's wrong with it? Well, first of all, I should note that the agency argument was raised for the first time in the reply brief. But I want to raise it directly. There's two responses. It's contrary to Supreme Court precedent, and it's contrary to the evidence in the record. The Supreme Court precedent, there's two lines of cases that would say that that agency argument is irrelevant. One is Cleveland v. Laddermill, which says that once due process applies, the question of what process is due is purely a federal question. And then the Chief Justice Roberts' opinions in Jones v. Flowers, again, reiterating what comes from Mullaney, that when notice is a person's due, the means employed must be such as one desires of actually informing the property owner would reasonably adopt. The property owner is the one suffering the property deprivation, not the tenant. Therefore, as a matter of federal law, the city has to send notice to the property owner. And that agency argument that the city's lawyers came up with in their reply is inconsistent with the factual record. And what the city argued below, the city did not argue below that they can satisfy all their obligations by giving the notice to the tenant. Notice the records even suggest that they even thought that would be adequate. There was a one-year period where, in fact, that's what they were doing from 2009 to 2010. But then they started trying to get it to the actual owner in a rather befuddled way, but they tried. So they didn't really seriously argue that agency argument below, so Judge Joyner had no reason to dispense with it. But let me deal with Perfetti. The district court appropriately considered Perfetti neither binding nor persuasive, and he did that in his order at page four of the appendix in the order denying the city's motion for summary judgment. The Commonwealth Court made what I would say are at least three legal errors in that opinion. Yes, they recognized that Doar controls. And, in fact, that sort of puts away even the city's reliance on Perfetti for the idea that Doar doesn't apply here. Even Perfetti agreed that Doar is binding. But here are the three things the Commonwealth said, each one of them that are wrong as a matter of law. Placing liens on property based on a failure to pay a debt are ordinarily uncomplicated matters that lend themselves to documentary proof, therefore you lose at step two. This was a motion dismissed. There was no record, nothing at all. What was the basis for concluding that there's no risk of error? The second error committed by the Commonwealth Court is that it concluded that the post-deprivation procedure provided for in the state statute, the post-deprivation procedure, was, as a practical matter, just fine, and that the post-deprivation notice and hearing could solve all problems. And then, finally, the Commonwealth Court said this, the trial court correctly held that due process was not violated in part because Perfetti could have avoided this predicament, like we started the argument, that the landlords could have done something to protect themselves to avoid this. Again, it's not the party's ability to protect themselves. This is about the state's obligation. Mr. Echolsberg, Jim Chardin has a question. One quick point of clarification, back to where I started. I posited that the lien first comes into play by operation of law. Yes. And I mean, you said, no, it's just a claim, right? The lien doesn't arise until it's perfected. Until it's perfected. Yes. Okay. But how do you square that with the lien law, and I'm going to quote from it, where it says, municipal claims are, quote, declared to be a lien on said property with priority to the proceeds of any judicial sale, and that's section 7106A1. Right. So it says the claim is a lien on the property. Yes, but then in B it says, but as to the city of the first class, that it's applicable to Philadelphia is that the lien must be filed in order for it to be enforceable. What about the argument that there is a pre-lien interest here at least in the city, by the city, for the city, that is akin to a mechanics lien, the steel and bond situation? Well, I mean, you can't dispute that the gas has been provided. Absolutely. It's already there. Of course. So is that not analogous to the mechanics lien situation, where the material's property is already invested in the property, already fixed there? And the filing's all about where you stand in line to collect. Yes. I mean, so the first answer is, no, there is no pre-existing property interest under the municipal lien law itself, for the reasons that I already stated. But even if we were to view there to be some sort of an inchoate interest, something there, there's a municipal claim. At the most, the significance of that would be that maybe the city's interest is more significant than the state interest in Dorr. I mean, we don't deny that it is. In fact, Judge Joyner acknowledged that there's a very substantial state interest. That's never really been a question here. The question here is, how do you apply Matthews v. Eldridge, the court did it properly, based on a record, and not only did he base it on a record, he based it on what he referred to in his opinion quite starkly, as a steadfast refusal by the city of Philadelphia to acknowledge its unassailable constitutional obligations. All right, thank you. We are as we were with Mr. Gottlieb beyond the time, but we thank you for your argument. Thank you. We'll hear rebuttal from Mr. Gottlieb. Let me just summarize what I think we are. I think we have three different independent and alternative arguments for reversal, and I think all three of them are worth discussing briefly so we can make sure that we understand that they're all separate and they don't connect to each other. Argument number one is Northwood textile. Notice to the agent is notice to the landlord. The court accepts that. I believe that that does end the case. Argument number two, which Mr. Ecclesbury didn't respond to, is what we refer to in our brief as the pre-pre-deprivation argument, and this is that they're asking for this novel request, that they're asking for notice before we even decide to do the deprivation before we do the deprivation. Deprivation doesn't happen until a lien is filed. They're asking us to give them notice of tenant delinquencies before the deprivation. I'm not aware of any case that ever imposes a due process right that broadly. Argument number three, so those are two independent reasons. They don't depend on each other. The third reason doesn't relate to either of the first two, and it's Matthews. And I think the points that have been discussed from Matthews are, one, there is no proof of likelihood of error. The district court seems to have gotten confused with the testimony. Mr. Rosario did specifically say there were a few errors. That's the extent of the testimony of the errors with the reading of the gas. The other important point for the Matthews analysis is this concept of a pre-existing interest, and I disagree with Mr. Ecclesbury on when the lien arose and how it arose. We briefed this. He says that B treats first-class cities, namely Philadelphia, differently than the rest of the Commonwealth. What's your response to that? It does, not for these purposes, though. The language used is judgment, I guess, so I'm not sure what to make of that. It becomes a judgment in that language when we file the lien. But that doesn't mean you don't have a lien at the time the gas is provided. That's your position? That's our position. You have a lien, it's just not a judgment, and it doesn't help get you in line for creditors until you perfect that lien. It is not a judgment until we perfect it. And just to support that a little bit more, Mr. Ecclesbury did agree that we have a claim when the service is provided, and I think, as Your Honor was suggesting, that 7106A specifically says that such claims shall be and are hereby declared to be a lien on said property. The claim is the lien. The lien happens immediately upon the service. It's what we call in our brief an undocketed lien. It becomes docketed when we docket it. The other support for this, Your Honor, is we didn't brief this because they didn't respond to this point in their brief. This is the first time they've ever taken exception to our assertion that the undocketed lien happens right away. But the language of 7106B was amended in 1990, and the language in the prior version said that the lien is created after the lien has been docketed, which would be consistent with their position. The words lien and after were both changed. The word lien was changed to judgment, and the word after was changed to when, thereby making it unmistakable that the lien had already arisen. The lien was clearly in place already, so the city has a preexisting interest, which under the law is dispositive. You concede that the city can do a better job here, but its job, such as it is, passes constitutional muster? It passes constitutional muster. Are there, back to Chief Judge Smith's question, are there efforts underway to make it, in your view, better than barely constitutional? I think it's already better than barely constitutional, but as the record does show that we are working on identifying and processing mismatches in a much quicker fashion. Is the Water Works process something of a model that could be followed here? Well, the difference between the water department and the city. I know what the differences are. The question was is it a model? Is there anything that the city can learn from that, mimic in terms of its gas system? Perhaps in some ways, Your Honor, but they're not bound by the PUC. That's the difference. All right. Thank you very much. I thank counsel, Mr. Gatlin, Mr. Ecclesburg. Thank you for your arguments. We'll take the case under advisement.